# **EXHIBIT 3**

George D. Jonson (0027124)
Trial Attorney for Defendants/Third Party Plaintiffs
The Fairchild Corporation and RHI Holdings, Inc.

## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MILACRON, INC. | : | Case No. A0404162 |
| Plaintiff | : | Judge Martin |
| vs. | : | |
| THE FAIRCHILD CORPORATION | : | |
| and | : | |
| RHI HOLDINGS, INC. | : | |
| Defendants/Third Party Plaintiffs | : | |
| vs. | : | |
| AMERICAN INTERNATIONAL GROUP, INC. | : | THIRD PARTY COMPLAINT |
| 70 Pine Street | | |
| New York, New York 10270 | : | |
| and | : | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a subsidiary of American International Group, Inc. | : | |
| 70 Pine Street | | |
| New York, New York 10270 | : | |
| and | : | |

COPY FILED
CLERK OF COURTS
HAMILTON COUNTY
OCT 19 2004
GREGORY HARTMANN
COMMON PLEAS COURTS

THE INSURANCE COMPANY OF THE :
STATE OF PENNSYLVANIA, a subsidiary
of American International Insurance :
Group, Inc.
70 Pine Street :
New York, New York 10270

and

ZURICH AMERICAN INSURANCE :
COMPANY
Zurich North America :
165 Broadway, 28th Floor
New York, New York 10006 :

and

ROYAL & SUNALLIANCE USA, :
Royal Insurance Company of America
9300 Arrowpoint Boulevard :
Charlotte, North Carolina 28273

and

THE HARTFORD FIRE INSURANCE :
COMPANY
One Hartford Plaza :
Hartford, Connecticut 06115

    Third Party Defendants

    Come now defendants/third party plaintiffs The Fairchild Corporation and RHI Holdings, Inc. and, for their Third Party Complaint against American International Group, Inc.; National Union Fire Insurance Company of Pittsburgh, PA; The Insurance Company of the State of Pennsylvania; Zurich American Insurance Company; Royal & SunAlliance USA; and The Hartford Fire Insurance Company; state as follows:

## The Parties

1. Plaintiff Milacron, Inc. ("Milacron") is a Delaware corporation, with its principal place of business in Cincinnati, Ohio. Milacron was formerly Cincinnati Milacron, Inc. Cincinnati Milacron became Milacron, Inc. in 1998.

2. Defendant/third party plaintiff The Fairchild Corporation ("Fairchild") is a Delaware corporation, with its principal place of business in McLean, Virginia.

3. Defendant/third party plaintiff RHI Holdings, Inc. ("RHI") is a Delaware corporation, with its principal place of business in McLean, Virginia. Fairchild is the parent of RHI.

4. Third party defendant American International Group, Inc. ("AIG") is a Delaware corporation, with its principal place of business in New York, New York, which does business in the State of Ohio.

5. Third party defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), a subsidiary of AIG, is a Pennsylvania corporation, with its principal place of business in New York, New York, which does business in the State of Ohio.

6. Third party defendant The Insurance Company of the State of Pennsylvania ("ISOP"), a subsidiary of AIG, is a Pennsylvania corporation, with a principal place of business in New York, New York, and which does business in the State of Ohio.

7. Third party defendant Zurich American Insurance Company ("Zurich") is a New York corporation, with offices at 165 Broadway, 28th Floor, New York, New York 10006, which does business in the State of Ohio.

8. Third party defendant Royal & SunAlliance USA, part of Royal Insurance Company of America ("Royal & SunAlliance"), is a Delaware corporation, with a principal place of business in Charlotte, North Carolina, which does business in the State of Ohio.

9. Third party defendant The Hartford Fire Insurance Company ("Hartford") is a Connecticut corporation, with a principal place of business in Hartford, Connecticut, which does business in the State of Ohio.

### Jurisdiction and Venue

10. Personal jurisdiction and venue are proper because third party defendants do business in Hamilton County, Ohio, and have all issued insurance policies to Fairchild and RHI that provide coverage for Milacron's claims against Fairchild and RHI.

### Background

11. On January 23, 1996, Milacron entered into an "Asset Purchase Agreement" with Fairchild and RHI, whereby Milacron purchased, and Fairchild and RHI sold, the business and substantially all assets related to RHI's D-M-E Business ("acquired assets"). D-M-E Business means the manufacture, sale, and distribution of mold bases, mold components, moldmaking tools and supplies, polishing equipment, electronic temperature and pressure control equipment, runnerless molding systems, and process controls and Computer Aided Design and Computer Aided Manufacturing ("CAD/CAM") hardware and software for the plastics industry. Certain relevant parts of the "Asset Purchase Agreement" are attached to Milacron's Complaint as Exhibit A.

12. On or after January 23, 1996, Milacron operated the D-M-E Business either as a division of Milacron or as a separately incorporated subsidiary of Milacron, under the name

D-M-E Company ("D-M-E"). D-M-E is not an affiliate of, and is not owned directly or indirectly by, Fairchild or RHI.

13. On January 10, 2002, 14 plaintiffs instituted 14 separate actions against D-M-E in the United States District Court for the Eastern District of Missouri, Eastern Division ("St. Louis actions"). All 14 plaintiffs were represented by the same lawyer, Burton Newman, Esquire, Lacks & Newman, St. Louis, Missouri.

14. Plaintiffs in the St. Louis actions were John Bernosky, Kenneth Bond, Tony Bradley, Keith Davis, Brian Kelley, Steven Kelley, Andrea Lazzareschi, Rob Nasello, Calvin Oyan, Shane Picker, Derrick Pickles, Anna Polach, Bradley Schlater and Dale Schlater.

15. Plaintiff John Bernosky alleged as follows:

> 2. Defendant, D-M-E Company, a corporation duly organized and existing under the laws of the State of Michigan, is and was, at all relevant times, transacting business in the State of Missouri. D-M-E Company is a Division of Milacron, Inc., an Ohio corporation transacting business in the State of Missouri.
>
> * * *
>
> 8. At all times stated herein, defendant was engaged in the business of designing, manufacturing, selling and distributing air-driven hand tools known as profilers, used in molding and manufacturing operations.
>
> 9. Said profilers were sold by defendant to various corporations within the Eastern District of Missouri.
>
> 10. Plaintiff was in the employ of one such manufacturer in the Eastern District of Missouri as a mold polisher who utilized D-M-E profilers as part of his employment.
>
> 11. In the course of said employment, plaintiff suffered severe injury and damages to his fingers, hands, wrists and forearms, thereby causing plaintiff to suffer damages as more fully described below.

-5-

12. At the time of his injuries, plaintiff was operating said profilers in a reasonably anticipated use or in a manner reasonably anticipated.

* * *

14. The profilers used by plaintiff, and each of them, were in a defective condition and were unreasonably dangerous upon leaving the possession or control of defendant and placed in the hands of plaintiff's employer for use by plaintiff in that:

   (a) Said D-M-E profilers caused vibration levels in excess ISO standards; and

   (b) Defendant failed to warn of physical harm from exposure to excessive vibration caused by these profilers during reasonably anticipated use; and

   (c) Defendant failed to warn that periodic evaluation of users, such as plaintiff, could disclose early signs and symptoms of the types of injuries exhibited by plaintiff in time thereafter to avoid the permanent injuries sustained by plaintiff; and

   (d) Defendant failed to provide a neoprene or similar handle to dampen and lessen the effects of excessive vibration of said profilers; and

   (e) Defendant failed to provide or recommend the use of gloves or other effective hand coverings to lessen the effects of excessive vibration of said profilers."

16. The 14 plaintiffs in the St. Louis actions were employed by several different employers in Missouri.

17. On March 11, 2002, without participation, knowledge or consent of Fairchild or RHI, D-M-E filed answers to the 14 complaints in the St. Louis actions. D-M-E was represented by Sandberg, Phoenix & von Gontard, PC, One City Centre, 15th Floor, St. Louis, Missouri.

18. Neither D-M-E nor Milacron notified Fairchild or RHI of the St. Louis actions when filed or answered. Neither Milacron nor D-M-E's St. Louis counsel consulted or communicated with any representative of Fairchild or RHI in preparing D-M-E's answers to the complaints in the St. Louis actions. Milacron did not send Fairchild or RHI copies of the complaints until February 2004; and, neither D-M-E nor Milacron ever sent Fairchild or RHI copies of D-M-E's answers to the complaints.

19. On May 14, 2002, without participation, knowledge or consent of Fairchild or RHI, the 14 St. Louis actions were consolidated under the caption <u>John Bernosky v. D-M-E Company</u>, No. 02-cv-37, solely for the purpose of determining liability.

20. On July 23, 2002, plaintiffs in the St. Louis actions filed their amended complaints to add Karl Fink GmbH as a defendant.

21. On August 5, 2002, without participation, knowledge or consent of Fairchild or RHI, D-M-E answered the St. Louis plaintiffs' amended complaints.

22. Neither D-M-E nor Milacron notified Fairchild or RHI of the filing of amended complaint or of D-M-E's answer thereto. Neither Milacron nor D-M-E's St. Louis counsel consulted or communicated with any representative of Fairchild or RHI in preparing D-M-E's answers to the amended complaints. Neither D-M-E nor Milacron ever sent Fairchild or RHI copies of the amended complaints or the answers thereto.

23. On September 26, 2003, the court granted Karl Fink's motion to dismiss for lack of personal jurisdiction.

24. On January 29, 2004, corporate counsel for Milacron wrote to Fairchild and RHI to provide "notice of a claim for indemnification" pursuant to the Asset Purchase Agreement.

Milacron advised that an initial mediation session was scheduled on February 16, 2004. A copy of that letter is attached to Milacron's Complaint as Exhibit B.

25. The January 29, 2004, letter was the first notice of the St. Louis actions given by Milacron or D-M-E to Fairchild and RHI.

26. On February 2, 2004, Milacron sent Fairchild and RHI copies of the 14 complaints in the St. Louis actions.

27. On February 4, 2004, Fairchild and RHI asked Milacron to send Fairchild and RHI documents pertaining to the St. Louis actions, in particular, discovery, and deposition materials. Fairchild and RHI were told by Milacron that very little discovery had taken place.

28. On February 6, 2004, Fairchild and RHI gave notice of the St. Louis actions to all insurance carriers and third-party claims administrators who provided general liability coverage to Fairchild, RHI, and related entities, including third party defendants herein.

29. On February 11, 2004, General Counsel for Fairchild and RHI wrote to Corporate Counsel at Milacron to respond to Milacron's demand for indemnification.

> This letter will serve as confirmation of receipt of your January 29, 2004 claim for indemnity under the Asset Purchase Agreement dated as of January 23, 1996 between Cincinnati Milacron Inc., The Fairchild Corporation, and RHI Holdings, Inc. (the "Purchase Agreement"). You have told us that the exposure period involved spans from 1986 to the present. *To the extent that evidence exists to substantiate that plaintiffs' losses, if any, are attributable to products manufactured or shipped during the pre-closing period, Fairchild will indemnify Milacron Inc. in accordance with the terms of the Purchase Agreement, subject to any prejudice caused by Milacron's late notice of these claims* [emphasis added].
>
> We have submitted copies of the fourteen complaints you provided to our various insurance carriers that issued policies during the relevant exposure period. Given the breadth of the alleged exposure period, and the fact that at least three separate insurance carriers may be involved, we expect that the insurance carriers will

- 8 -

> need a minimum of ninety days to evaluate the claims, make a determination of benefits, and engage counsel on Fairchild's behalf, to the extent that the carriers determine separate representation is necessary. Consequently, our carriers' third-party claim administrators recommend that you reschedule the February 16, 2004 mediation conference so that all interested parties may have the opportunity to participate.

(February 11, 2004, letter from Donald Miller to Walter Samuel Wood, a copy of which is attached hereto as Exhibit 1.)

30. By order entered February 17, 2004, the district court in the St. Louis actions directed the parties to submit to mediation; scheduled mediation for April 13, 2004; and scheduled, if mediation were not successful, a Daubert hearing for May 6, 2004, and trial to begin June 1, 2004.

31. On April 12, 2004, Fairchild and RHI called Milacron to confirm that the April 13, 2004, settlement conference was going forward as scheduled, and to advise that it did not appear that Fairchild and RHI's insurance carriers would be sending counsel to the settlement conference. Fairchild and RHI advised Milacron that it could not participate in settlement without instruction from its carriers and without any information about the St. Louis actions, including which products were involved, the nature of injuries to the 14 plaintiffs, and whether there are possible offsets through workers compensation or other payments.

32. A first set of mediations was held April 13 - 16, 2004, and D-M-E settled with seven plaintiffs without participation, knowledge or consent of Fairchild or RHI. On May 18, 2004, the district court entered seven stipulations of dismissal. On May 19, 2004, the district court entered seven orders dismissing, with prejudice, the seven actions of the settling plaintiffs. Settling plaintiffs were Kenneth Bond, Steven Kelley, Rob Nasello, Calvin Oyan, Shane Picker, Derrick Pickles, and Anna Polach.

33. On May 24, 2004, Milacron instituted the instant action against Fairchild and RHI.

34. In the instant lawsuit, Milacron alleges four causes of action arising from the Asset Purchase Agreement, the St. Louis actions and the D-M-E Profilers designed, manufactured or sold before January 23, 1996: breach of contract; indemnification; contribution; and declaratory judgment. Milacron demands: compensatory damages; a declaration that plaintiffs are required to defend and indemnify Milacron in accordance with the Asset Purchase Agreement; and costs of litigating both the St. Louis actions and the instant action, including attorneys fees.

35. In the St. Louis actions, a second set of mediations was held June 18 - 19, 2004, and D-M-E settled with five more plaintiffs without participation, knowledge or consent of Fairchild or RHI. No stipulations or orders of dismissal have been entered. Settling plaintiffs were John Bernosky, Tony Bradley, Keith Davis, Brian Kelley, and Andrea Lazzareschi.

36. The two St. Louis plaintiffs who have not settled are Bradley Schlater and Dale Schlater.

## COUNT ONE

### Declaratory Judgment Against Zurich

37. Fairchild and RHI purchased, from Zurich, General Liability Insurance Policy No. GA 32-53-770-00, for the period 1-1-84 to 1-1-87. (This policy is too voluminous to be easily affixed hereto, and third party defendant Zurich is in possession of a copy of the policy.)

38. This policy covers its insureds for damages because of bodily injuries arising out of products of its insureds, including costs of defense, settlements, and judgments.

39. RHI, including its D-M-E Division, is a named insured under the Zurich policy.

40. Fairchild and RHI had a valid and enforceable insurance contract with Zurich, obligating Zurich to defend and to cover losses arising from the St. Louis actions, including costs of defense, settlement, and judgment.

41. Zurich has failed to indemnify Fairchild, RHI, Milacron or D-M-E via the Asset Purchase Agreement, for such losses, in breach of its obligations under the policy.

42. Fairchild and RHI ask the Court to declare that Zurich has an obligation to defend and indemnify Fairchild, RHI, Milacron or D-M-E in accordance with its Policy No. GA 32-53-770-00, and to award damages in favor of Fairchild and RHI, and against Zurich.

43. Additionally, as Milacron's Complaint herein asserts claims for indemnity and contribution arising out of the settlement of the products liability claims of the St. Louis plaintiffs, which claims are covered by Zurich's policy, Fairchild and RHI ask the Court to declare that Zurich has an obligation to defend and indemnity Fairchild and RHI from and against Milacron's Complaint herein, in accordance with its Policy No. GA-32-53-770-00, and to award damages in favor of Fairchild and RHI and against Zurich, including, but not limited to, their legal fees expended in the defense of this action.

## COUNT TWO

### Declaratory Judgment Against AIG, ISOP, and National Union

44. Fairchild and RHI purchased from AIG and its subsidiaries, ISOP and National Union, the following policies and periods:

    (a)    National Union, commercial general liability policy no. GLA 197-77-90, 1/1/87 to 1/1/88.

    (b)    ISOP, commercial general liability policy no. 80-201748, 1/1/88 to 1/1/89.

    (c)    National Union, commercial general liability policy no. GLA 459-61-19, 1/1/89 to 1/1/90.

    (d)    National Union, commercial general liability policy no. RM GL 460-03-61, 1/1/90 to 1/1/91.

    (e)    National Union, commercial general liability policy no. RM GL 325-28-51, 7/1/91 to 7/1/92.

    (f)    National Union, commercial general liability policy no. RM GL 326-48-72, renewal of no. 325-28-51, 7/1/92 to 7/1/93.

    (g)    National Union, commercial general liability policy no. RM GL 175-93-81, renewal of no. 326-48-72, 7/1/93 to 7/1/94.

    (h)    National Union, commercial general liability policy no. RM GL 319-82-53, renewal of no. 175-93-81, 7/1/94 to 7/1/95.

    (i)    National Union, commercial general liability policy no. RM GL 121-25-29, renewal of no. 319-82-53, 7/1/95 to 7/1/96, extended through 10/1/96.

    (j)    National Union, commercial general liability policy no. RM GL 143-79-13, renewal of no. 121-25-29, 10/1/96 to 10/1/97.

    (k)    National Union, commercial general liability policy no. RM GL 143-96-18, renewal of no. 143-79-13, 10/1/97 to 10/1/98.

    (l)    National Union, commercial general liability policy no. RM GL 612-23-30, renewal of no. 143-96-18, 10/1/98 to 10/1/99.

(These policies are too voluminous to be easily affixed hereto, and third party defendants AIG, ISOP, and National Union are in possession of copies of these policies.)

    45.    These policies (a) through (l) above covered Fairchild, RHI, and their affiliates for damages for bodily injuries arising out of products of insureds, including costs of defense, settlements, and judgments.

46. RHI, including its D-M-E Division, was an insured under the above AIG, National Union, and ISOP policies.

47. On February 5, 2004, Fairchild and RHI, through Crawford & Company, gave notice of the St. Louis actions to AIG, National Union, and ISOP.

48. Fairchild and RHI had valid and enforceable insurance contracts with AIG, National Union, and ISOP obligating them to defend and to cover losses arising from the St. Louis actions, including costs of defense, settlement, and judgment.

49. AIG, National Union, ISOP have failed to indemnify Fairchild, RHI, Milacron or D-M-E, via the Asset Purchase Agreement, for such losses, in breach of their obligations under the policies set forth above.

50. Fairchild and RHI ask the Court to declare that AIG, National Union, and ISOP have obligations to defend and indemnify Fairchild, RHI, Milacron or D-M-E, in accordance with the policies identified in paragraphs 44 (a) through (l) above, and to award damages in favor of Fairchild and RHI, and against AIG, National Union, and ISOP.

51. Additionally, as Milacron's Complaint herein asserts claims for indemnity and contribution arising out of the settlement of the products liability claims of the St. Louis plaintiffs, which claims are covered by AIG's, National Union's, and ISOP's policies, Fairchild and RHI ask the Court to declare that AIG, National Union, and ISOP have an obligation to defend and indemnity Fairchild and RHI from and against Milacron's Complaint herein, in accordance with the policies identified in paragraphs 44 (a) through (l) above, and to award damages in favor of Fairchild and RHI and against AIG, National Union, and ISOP, including, but not limited to, their legal fees expended in the defense of this action.

## COUNT THREE

### Declaratory Judgment Against Royal & SunAlliance

52. Fairchild and RHI purchased from Royal & SunAlliance the following policies and periods:

   (a) Commercial general liability policy no. PTS 461128, 11/15/99 to 11/15/00.

   (b) Commercial general liability policy no. PTS 463069, 11/15/00 to 11/15/01.

   (c) Commercial general liability policy no. P2TS 463069, 11/15/01 to 12/15/01.

   (d) Commercial general liability policy no. KHA 100521, 12/15/01 to 12/30/02.

   (e) Commercial general liability policy no. K2HA 10185, 12/30/02 to 12/15/03.

(These policies are too voluminous to be easily affixed hereto, and third party defendant Royal & SunAlliance is in possession of copies of these policies.)

53. On February 9, 2004, Fairchild and/or RHI gave notice of the St. Louis actions to Royal & SunAlliance.

54. On February 24, 2004, Royal & SunAlliance acknowledged receiving notice of the St. Louis actions.

55. By letter dated April 29, 2004, "Royal concludes that it does not have any present obligation to Fairchild with respect to these claims" asserted in the St. Louis actions.

56. On June 14, 2004, Royal & SunAlliance denied coverage.

57. Fairchild and RHI had valid and enforceable insurance contracts with Royal & SunAlliance obligating it to defend and cover losses arising from the ST. Louis actions, including costs of defense, settlement, and judgment.

58. Royal & SunAlliance has failed to indemnify Fairchild, RHI, Milacron or D-M-E, via the Asset Purchase Agreement, for such losses, in breach of its obligations under the policies identified in paragraphs 52 (a) through (e) above.

59. Fairchild and RHI ask the Court to declare that Royal & SunAlliance has an obligation to defend and indemnify Fairchild, RHI, Milacron or D-M-E, in accordance with the policies identified in paragraphs 52 (a) through (e) above, and to award damages in favor of Fairchild and RHI, and against Royal & SunAlliance.

60. Additionally, as Milacron's Complaint herein asserts claims for indemnity and contribution arising out of the settlement of the products liability claims of the St. Louis plaintiffs, which claims are covered by Royal & SunAlliance's policies, Fairchild and RHI ask the Court to declare that Royal & SunAlliance has an obligation to defend and indemnify Fairchild and RHI from and against Milacron's Complaint herein, in accordance with policies (a) through (e) above, and to award damages in favor of Fairchild and RHI and against Royal & SunAlliance, including, but not limited to, their legal fees expended in the defense of this action.

## COUNT FOUR

### Declaratory Judgment Against The Hartford Fire Insurance Company

61. Fairchild and RHI purchased from Hartford general liability insurance policy no. 10 UEN TS1005, for the period 12/15/2003 through 12/15/2004. (This policy is too voluminous to be easily affixed hereto, and third party defendant Hartford is in possession of a copy of this policy.)

62. This policy covers its insureds for damages because of bodily injuries arising out of products of its insureds, including costs of defense, settlements, and judgments.

63. On March 2, 2004, Fairchild and RHI gave notice of the St. Louis actions to Hartford.

64. On March 23, 2004, Hartford acknowledged receiving notice of the St. Louis actions.

65. On April 20, 2004, Hartford denied coverage.

66. Fairchild and RHI have a valid and enforceable insurance contract with Hartford obligating Hartford to defend and cover losses arising out of the St. Louis actions, including costs of defense, settlements, and judgment.

67. Hartford has failed to indemnify Fairchild, RHI, Milacron or D-M-E, via the Asset Purchase Agreement, for such losses, in breach of its obligation under the policy set forth above.

68. Fairchild and RHI ask the Court to declare that Hartford has obligations to defend and indemnify Fairchild, RHI, Milacron or D-M-E, in accordance with policy identified above, and to award damages in favor of Fairchild and RHI, and against Hartford.

69. Additionally, as Milacron's Complaint herein asserts claims for indemnity and contribution arising out of the settlement of the products liability claims of the St. Louis plaintiffs, which claims are covered by Hartford's policy, Fairchild and RHI ask the Court to declare that Hartford has an obligation to defend and indemnity Fairchild and RHI from and against Milacron's Complaint herein, in accordance with the policy identified above, and to award damages in favor of Fairchild and RHI and against Hartford, including, but not limited to, their legal fees expended in the defense of this action.

WHEREFORE, defendants/third party plaintiffs The Fairchild Corporation and RHI Holdings, Inc. ask this Court for the following relief:

(1) To declare that Zurich has an obligation to defend and indemnify Fairchild, RHI, Milacron or D-M-E in accordance with its Policy No. GA 32-53-770-00, and to award compensatory damages to Fairchild and RHI.

(2) To declare that AIG, National Union, ISOP have obligations to defend and indemnify Fairchild, RHI, Milacron or D-M-E in accordance with the policies in paragraph 44 (a) through (l) above, and to award compensatory damages to Fairchild and RHI.

(3) To declare that Royal & SunAlliance has an obligation to defend and indemnify Fairchild, RHI, Milacron or D-M-E in accordance with the policies in paragraph 52 (a) through (e) above, and to award compensatory damages to Fairchild and RHI.

(4) To declare that Hartford has an obligation to defend and indemnify Fairchild, RHI, Milacron or D-M-E in accordance with its Policy No. 10 UEH TS1005, and to award compensatory damages to Fairchild and RHI.

Fairchild and RHI request that this Court award such other relief as the Court may deem appropriate.

Respectfully submitted,

GEORGE D. JONSON (0027124)
MONTGOMERY, RENNIE & JONSON
*Counsel for Defendants /*
*Third Party Plaintiffs*
36 East Seventh Street, Suite 2100
Cincinnati, Ohio 45202
Tel:   (513) 768-5220 – direct
Fax:   (513) 241-8775
gjonson@mrj.cc

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by First-Class U.S. Mail, postage prepaid, upon Christopher M. Bechhold, Thompson Hine, LLP, 312 Walnut Street, Suite 1400, Cincinnati, Ohio 45202-4089; on this 18th day of October, 2004.

*GEORGE D. JONSON*

150\759\pleadings\third party complaint

## TO THE CLERK:

Please serve copies of the foregoing Third Party Complaint, via certified mail, return receipt requested, upon third party defendants American International Group, Inc.; National Union Fire Insurance Company of Pittsburgh, PA; The Insurance Company of the State of Pennsylvania; Zurich American Insurance Company; Royal & SunAlliance USA; and The Hartford Fire Insurance Company; at the addresses listed for them on the face of this Third Party Complaint.

*GEORGE D. JONSON*

The Fairchild Corporation
1750 Tysons Boulevard, Suite 1400
McLean, Virginia 22102
703-478-5800



February 11, 2004

VIA FACSIMILE 513-487-5969
AND REGULAR MAIL

Walter Samuel Wood, Esq.
2090 Florence Avenue
Cincinnati, Ohio 45206-2425

Re:  Bernosky, et al. v. D-M-E Company

Dear Mr. Wood:

This letter will serve as confirmation of receipt of your January 29, 2004 claim for indemnity under the Asset Purchase Agreement dated as of January 23, 1996 between Cincinnati Milacron Inc., The Fairchild Corporation, and RHI Holdings, Inc. (the "Purchase Agreement"). You have told us that the exposure period involved spans from 1986 to the present. To the extent that evidence exists to substantiate that plaintiffs' losses, if any, are attributable to products manufactured or shipped during the pre-closing period, Fairchild will indemnify Milacron Inc. in accordance with the terms of the Purchase Agreement, subject to any prejudice caused by Milacron's late notice of these claims.

We have submitted copies of the fourteen complaints you provided to our various insurance carriers that issued policies during the relevant exposure period. Given the breadth of the alleged exposure period, and the fact that at least three separate insurance carriers may be involved, we expect that the insurance carriers will need a minimum of ninety days to evaluate the claims, make a determination of benefits, and engage counsel on Fairchild's behalf, to the extent that the carriers determine separate representation is necessary. Consequently, our carriers' third-party claim administrators recommend that you reschedule the February 16, 2004 mediation conference so that all interested parties may have the opportunity to participate.

Very truly yours,

Donald E. Miller
Executive Vice President, General Counsel
& Corporate Secretary

cc:  Ernesto Beckford, Esq.
     Ms. Carla Abbud
     Ms. Cheryl Brooks

EXHIBIT
1