

RiverStone Claims Management LLC
250 Commercial Street, Suite 5000
Manchester, New Hampshire 03101
TELEPHONE:     (603) 656-2297
TOLL FREE:     (888) 257-2059
FACSIMILE:     (603) 656-2554

July 24, 2007

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Ms. Cheryl E. Brooks
The Fairchild Corporation
1750 Tysons Boulevard
Suite 1400
McLean, VA  22102-4244

| | | |
|---|---|---|
| **Policyholder** | : | **Fairchild Corporation** |
| **Insured** | : | **Fairchild Corporation** |
| **Policy Numbers** | : | **XLB9151959  (7/1/95-7/1/96  extended  by endorsement to 10/1/96) and** |
| | | **XLB9152271 (10/1/96-10/1/97)** |
| **Insurance Company** | : | **TIG Insurance Company ("TIG")** |
| **Claimants** | : | **Daniel Alldredge, et al; John Bernosky; Kenneth Bon; Tony Bradley; Robert Cooley; Keith Davis; Brian Kelley; Steven Kelley; Andrea Lazzareschi; Joseph Lumetta; Steven Main and John Matthew Madden; Silas Mercer, et al; Rob Nasello; Calvin Oyan; Shane Picker; Derrick Pickles; Anna Polack; Richard Reed; Bradley Schlater; Dale Schlater; and Michael Shaw, et al** |

Dear Ms. Brooks:

As you are aware, RiverStone Claims Management LLC ("RiverStone") is administering this claim on behalf of TIG Insurance Company ("TIG") under policies XLB9151959 and XLB9152271 (the "Policies"). Please continue to direct all future correspondence concerning this claim to my attention at RiverStone using the address indicated above.

This correspondence will communicate TIG Insurance Company's coverage analysis concerning the captioned matter, and will explain why policies XLB9151959 and XLB9152271 are not potentially applicable at this time to costs sought or recovered from Fairchild Corporation pertaining to the alleged lawsuits filed by the above-captioned claimants as the Policies provide for <u>excess</u> coverage only which is not yet triggered due to no evidence of exhaustion of the underlying policies.

## NOTICE OF CLAIM AND CLAIM HISTORY

By The Fairchild Corporation's ("Fairchild") letter dated December 1, 2006 addressed to TIG Specialty Insurance Solutions c/o Fairfax Financial Holdings, Ltd. Irving, Texas, Fairchild placed TIG on notice of several "product liability claims emanating from the use of a product known as the Jiffy Profiler." Your letter of December 1, 2006 provided an "Attachment" which identified twenty-one (21) alleged lawsuit captions and case numbers venued at several courts including: U.S. District Court, Southern District of Indiana; U.S. District Court, Eastern District of Missouri; Missouri Circuit Court, 22nd Judicial Circuit; and the U.S. District Court, Western District of Hawaii. Your December 1, 2006 correspondence did not include copies of the alleged lawsuits but instead you advised that "Because the pleadings in these matters are quite voluminous, we have formatted them in PDF and will forward them to you as soon as you have provided us with an e-mail address." These alleged product liability lawsuits were tendered to TIG under policies XLB9151959 and XLB9152271.

RiverStone, on behalf of TIG, by correspondence to your attention dated December 29, 2006 acknowledged receipt of this matter. Additionally, in our December 29, 2006 we provided you with our e-mail address, requested copies of the pleadings for each of the twenty-one tendered product liability claims and also requested the following information:

A. As stated in your December 1, 2006 correspondence, please provide us with the pleadings referenced in the "Attachment" to your letter. My email address is noted at the end of this correspondence.

B. Please also provide us with a coverage chart identifying all primary, umbrella and excess insurers that have been tendered these claims. Kindly also inform us of the coverage position taken by each tendered insurer.

C. Please provide us with information about the "Jiffy Profiler" including but not limited to Material Data Sheets, sales literature, and other complaints/claims alleged due to this product, etc.

D. Please provide us with any contracts pertaining to the manufacturing and distribution of the "Jiffy Profiler".

E. Is "Fairchild Corporation" listed as an additional insured and/or an indemnified party under any contract pertaining to the Jiffy Profiler product?

F. Please identify the names and addresses of all counsel who have been retained to represent and defend Fairchild Corporation in these Complaints.

G. Please identify the insurers who are providing a defense to Fairchild Corporation for these Complaints.

H. Please provide us with litigation reports from each attorney defending Fairchild Corporation in these Complaints.

To date, Fairchild Corporation and/or its attorneys have not provided RiverStone, on behalf of TIG with any of the above-requested documents and information. **Please consider this correspondence to be TIG's subsequent request that Fairchild provide us with the above-noted documents and information.**

We did receive your emailed letters of January 11, 2007 when you provided copies of the Policies and also stated that Fairchild's attorneys would respond to our requests for information and documents in this matter.

## DESCRIPTION OF CLAIMS

The only information that Fairchild has provided RiverStone about the twenty-one tendered claims was the limited information provided in your December 1, 2006 correspondence advising that the claims were product liability claims resulting from the use of a product known as the Jiffy Profiler. You informed us that the claimants have alleged that they sustained bodily injury from the prolonged usage of the products and the bodily injuries have been identified as "Hands and Arm Vibration Syndrome."

As you requested, we provided Fairchild with our email address in our December 29, 2006 acknowledgment letter.

While we still have not received copies of the alleged lawsuits tendered in your December 1, 2006 letter, we did speak on July 18, 2007 with Fairchild's counsel, G. Todd Hoffpauir, who advised us that subsequent to Fairchild's December 1, 2006 letter to TIG, approximately sixty-four (64) additional product liability claims have been filed against Fairchild. Additionally, Attorney Hoffpauir informed us that recently a $3,300,000 judgment was entered against Fairchild pertaining to the product liability claims and he advised that there was a possibility, dependant upon the results of an ongoing declaratory judgment coverage action involving Fairchild and at least some of its primary insurers, that the primary underlying insurance coverage could be exhausted resulting in claims for coverage under the TIG policies.

During our July 18, 2007 conversation with Attorney Hoffpauir, we repeated our requests for the information and documentation first requested from Fairchild in our December 29, 2006 letter and repeated in our April 26, 2007 email letter to Fairchild's counsel. Additionally on July 18, 2007, we also requested copies of the underlying insurers' policies, coverage analysis letters, evidence of underlying insurance coverage exhaustion, documents pertaining to the pending declaratory judgment coverage action, any court decisions pertaining to coverage in this matter, and any other information pertaining to Fairchild's claim for coverage under the Policies.

Upon receipt and review of the requested information and documents from Fairchild and your counsel, we will issue a supplemental coverage analysis letter if appropriate.

## POLICIES

TIG issued the following policies to Fairchild Corporation:

| Policy Number | Policy Period | Limits of Liability / Attachment Points |
|---|---|---|
| XLB9151959 | 7/1/95-7/1/96 (extended by endorsement to 10/1/96) | $25,000,000 each Occurrence and Aggregate Excess of $10,000 Self-Insured Retention Limit Excess of primary insurance coverage limits of: $1,000,000 each Occurrence, $5,000,000 General Aggregate and $2,000,000 Products/Completed Operations Aggregate |
| XLB9152271 | 10/1/96-10/1/97 | $25,000,000 each Occurrence and Aggregate Excess of primary limits of: $1,000,000 each Occurrence, $2,000,000 General Aggregate and $2,000,000 Products/Completed Operations Aggregate |

Based upon our review of policies XLB9151959 and XLB9152271 and the information we have obtained regarding the captioned matter, RiverStone has determined that TIG Insurance Company has no current obligation to defend Fairchild Corporation in the captioned matter, or to indemnify Fairchild Corporation for the damages sought by the claimants in the captioned matters, since the underlying insurance and other insurance available to Fairchild Corporation has not yet been properly exhausted by payment of covered claims. The remainder of this correspondence will explain our analysis and determination under policies XLB9151959 and XLB9152271.

Policies XLB9151959 and XLB9152271 are Coverage Plus Excess Liability Policies, which contain Coverage Plus Umbrella Liability Policy Form EL 19309 which includes the following insuring agreement:

**SECTION I**
**INSURING AGREEMENTS**

    A. COVERAGE

        WE will pay on YOUR behalf the sums that YOU shall become legally obligated to pay as damages because of PERSONAL INJURY, PROPERTY DAMAGE, or ADVERTISING INJURY, caused by an OCCURRENCE to which this policy applies during this POLICY PERIOD. The OCCURRENCE must take place in the COVERAGE TERRITORY.

    B. LIMITS OF INSURANCE

4

WE shall be liable only for that portion of the ULTIMATE NET LOSS in excess of:

1. The applicable limits of the UNDERLYING INSURANCE listed in the attached Schedule of UNDERLYING INSURANCE (whether such insurance is collectible or not), or;

2. With respect to an OCCURRENCE for which no UNDERLYING INSURANCE applies and to which this policy applies, the greater of either:

    a. The applicable limit or limits of liability of any OTHER INSURANCE available to YOU, or;

    b. The amount stated in the Declarations as the INSURED'S RETAINED LIMIT.

Regardless of the number of persons and organizations who are INSUREDS under this policy, and regardless of the number of claims made or suits brought against any or all INSUREDS, on account of PERSONAL INJURY, PROPERTY DAMAGE, or ADVERTISING INJURY, the total limits of OUR liability for ULTIMATE NET LOSS resulting from any one OCCURRENCE shall not exceed the amount stated as the each OCCURRENCE limit in the Declarations.

Subject to the provision respecting any one OCCURRENCE, when the underlying policies listed in the Schedule of UNDERLYING INSURANCE or any OTHER INSURANCE available to YOU and to which this policy applies provide coverage(s) which are subject to an aggregate limit of liability for all covered damages, OUR liability shall likewise be limited to the amount stated in the Declarations as the aggregate limit for ULTIMATE NET LOSS arising out of one or more OCCURRENCES while this policy is in force commencing from its effective date. If the aggregate limits of liability under any UNDERLYING INSURANCE are reduced or exhausted solely by reason of losses paid thereunder arising out of OCCURRENCES which take place during OUR POLICY PERIOD, then this policy shall:

1. in the event of reduction, pay the excess of the reduced underlying limit;

2. in the event of exhaustion continue in force as UNDERLYING INSURANCE.

The aggregate limit of this policy shall apply separately to (i) the PRODUCTS – COMPLETED OPERATIONS HAZARD as defined in

5

this policy and (ii) any other coverage in which the UNDERLYING INSURANCE provides an aggregate limit. If the UNDERLYING INSURANCE does not provide an aggregate limit for coverage(s), OUR liability for ULTIMATE NET LOSS (except for the PRODUCTS - COMPLETED OPERATIONS HAZARD as referred to in "i" above) is likewise not subject to an aggregate limit for all insured damages for such coverage(s).

The limits of insurance apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the POLICY PERIOD shown in the Declarations. Should the POLICY PERIOD be extended after the policy effective date for an additional period of less than twelve (12) months, the additional period will be deemed part of the preceding period for the purposes of determining the limits of insurance.

C. DEFENSE PROVISIONS AND SUPPLEMENTAL PAYMENTS

  1. DEFENSE PROVISIONS

     a. With respect to any OCCURRENCE covered by the UNDERLYING INSURANCE listed in the Schedule of UNDELRYING INSURANCE or any OTHER INSURANCE available to YOU and to which this policy applies, WE shall not be called upon to assume charge of the investigation, settlement or defense of any claim made or SUIT brought against YOU, but WE shall have the right and be given the opportunity to be associated in the defense and trial of any claims or suits relative to any OCCURRENCE which, in OUR opinion, may create liability on the part of US under the terms of this policy.

     b. With respect to any OCCURRENCE (1) not covered by the UNDERLYING INSURANCE or any OTHER INSURANCE available to YOU, or (2) unavailable because of the exhaustion of aggregate limits of insurance, but covered by the terms and conditions of this policy, WE shall defend such SUIT against YOU seeking damages on account of PERSONAL INJURY, PROPERTY DAMAGE, or ADVERTISING INJURY and WE may make such investigation and effect settlement of any claim or SUIT so defended.

     WE shall not be obligated to defend any SUIT after the applicable limits of this policy have been exhausted by payment of the ULTIMATE NET LOSS.

Policies XLB9151959 and XLB9152271 contain the following definitions:

## SECTION III
## DEFINITIONS

* * *

K.     OCCURRENCE means an accident including continuous or repeated exposure to substantially the same general harmful conditions.

L.     OCCUPATIONAL DISEASE means an accident including continuous or repeated exposure to substantially the same general harmful conditions.

M.     OTHER INSURANCE means insurance, other than UNDERLYING INSURANCE, which has been provided to YOU and affords coverage with respect to injury or damage to which this policy also applies.

N.     PERSONAL INJURY means:

       1.     Bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time;

       2.     One or more of the following offenses:

             (a) Fright, disability, shock, mental anguish and mental injury;
             (b) False arrest, detention, imprisonment, or malicious prosecution;
             (c) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord, or lessor;
             (d) Libel, slander, defamation of character, humiliation or invasion of the rights of privacy, unless arising out of advertising activities.

O.     POLICY PERIOD means the period stated in the Declarations of this policy.

P.     POLLUTANTS means any noise, solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalies, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Q.     PRODUCTS-COMPLETED OPERATIONS HAZARD includes:

       1.     All PERSONAL INJURY and PROPERTY DAMAGE occurring away from premises YOU own or rent and arising out of YOUR PRODUCT or YOUR WORK except:
             a.     products that are still in YOUR physical possession;

      b.    work that has not yet been completed or abandoned.

2. YOUR WORK will be deemed completed at the earliest of the following times:
   a. When all of the work called for in YOUR contract has been completed
   b. When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
   c. When that part of the work done at a job site has been put to its intended use by any person or organization other then another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3. This HAZARD does not include PERSONAL INJURY or PROPERTY DAMAGE arising out of:
   a. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the LOADING or UNLOADING of it;
   b. the existence of tools, uninstalled equipment or abandoned or unused materials.

R. PROPERTY DAMAGE means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
2. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the OCCURRENCE that caused it.

\*\*\*

T. SUIT means a civil proceeding in which damages to which this policy applies are alleged. SUIT includes:

1. An arbitration proceeding in which such damages are claimed and to which you MUST submit or do submit with OUR consent; or
2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which YOU submit with OUR consent.

U. ULTIMATE NET LOSS means the amount of the principal sum, award or verdict actually paid or payable in cash in the settlement or satisfaction of

8

    claims for which the INSURED is liable, either by adjudication or compromise with the written consent of US, after making proper deduction for all recoveries and salvages.

V. UNDERLYING INSURANCE means the policy or policies of insurance as described in the Schedule of Underlying Insurance forming a part of this policy.

\*\*\*

Y. YOUR PRODUCT means:

  1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    a. YOU;
    b. Other trading under YOUR name; or
    c. a person or organization whose BUSINESS or assets YOU have acquired; and

  2. Containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or products.

YOUR PRODUCT includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of YOUR PRODUCT; and the providing of or failure to provide warnings of instructions.

YOUR PRODUCT does not include vending machines or other property rented to or located for the use of others but not sold.

Policies XLB9151959 and XLB9152271 contain the following exclusions that may limit or preclude coverage as follows:

### SECTION II (EXCLUSIONS)
### WHAT IS NOT COVERED BY THIS POLICY

This insurance does not apply:

A. Except insofar as coverage is available to YOU in the UNDERLYING INSURANCE and for the full limits of liability shown therein, to:

    1. Any liability assumed by YOU under any written, oral, or implied contract or agreement;

9

        2. Fines, penalties, punitive damages, exemplary damages, or treble damages in whatever form assessed (unless prohibited by law);

\*\*\*

E. To any obligation YOU have under any Workers Compensation, Unemployment Compensation, Disability Benefits law, or any other similar law.

F. To PERSONAL INJURY to YOU or any INSURED under this policy arising out of an OCCUPATIONAL DISEASE.

\* \* \*

M. To PERSONAL INJURY or PROPERTY DAMAGE expected or intended from the standpoint of the INSURED; however this exclusion does not apply to PERSONAL INJURY resulting from the use of reasonable force to protect persons or property.

N. To any liability arising directly or indirectly out of:

    1. the actual, alleged or threatened existence, discharge, dispersal, seepage, migration, release or escape of POLLUTANTS;

    2. to any loss, cost or expense arising out of any directive, request, demand or order that YOU or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of POLLUTANTS;

    3. Any claim or SUIT by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of POLLUTANTS.

Policy XLB9151959 also contains "Pollution Exclusion Amendatory Endorsement (B)" form EL19284 6/91 which limits or precludes coverage and reads as follows:

It is agreed that "Section II – Item N" of the policy is amended to read as follows:

E.     BODILY INJURY, PROPERTY DAMAGE, PERSONAL INJURY arising out of:
    1.     the actual, alleged or threatened discharge, dispersal, release or escape of POLLUTANTS;

    2.     to any loss, cost, or expense arising out of any governmental directive or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize POLLUTANTS.

10

WE shall have no duty or obligation to provide or pay for the investigation or defense of any loss, cost, expense, claim or SUIT excluded above and in connection therewith Defense, Settlement and Supplementary Payments shall not apply.

However, this exclusion shall not apply to heat, smoke or fumes from a HOSTILE FIRE if arising at or from premises you own, rent or occupy; or any site or location on which you or any contractor or subcontractor working directly or indirectly on your behalf are performing operations.

As used in this exclusion, A HOSTILE FIRE means one which becomes uncontrollable or breaks out from where it was intended to be.

Policy XLB9152271 also contains "Pollution Exclusion Amendatory Endorsement (C)" form EL23721 5/95 which limits and precludes coverage and reads as follows:

It is agreed that Section II – Item N of this policy is deleted in its entirety and replaced by the following:

N. To Personal Injury, Property Damage or Advertising Injury arising directly or indirectly out of:

1. the actual, alleged or threatened existence, discharge, dispersal, seepage, migration, release or escape of POLLUTANTS;

2. to any loss, cost, or expense arising out of any directive, request, demand or order that you or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants;

3. any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

WE shall have no duty or obligation to provide or pay for the investigation or defense of any loss, cost, expense, claim or suit excluded above and in connection therewith Defense, Settlement and Supplementary Payments shall not apply.

However, Section 1. of this exclusion shall not apply to:

1. Heat, smoke or fumes from a HOSTILE FIRE if arising at or from

   A. Premises which is or was owned, rented or occupied by you; or
   B. Any site or location on which you or any contractor or subcontractor working directly or indirectly on your behalf are performing operations.

11

As used in this exclusion, A HOSTILE FIRE means one which becomes uncontrollable or breaks out from where it was intended to be.

2. The upset, overturn or collision of an automobile.

Policy XLB9151959 also contains "Exclusion Aerospace Products and Aircraft Grounding" form EL19001 (5/1/89) which limits and precludes coverage as set forth as:

This insurance does not apply to:

    a. aerospace products and completed operations; or
    b. reliance upon any representation or warranty made with respect thereto; and
    c. grounding of any aircraft.

Aerospace Products and Completed Operations means:

    a. aircraft, including missiles or spacecraft and ground support or control equipment, and any other goods or products manufactured, sold, handled or distributed by you or any services provided or recommended by you or by others trading under your name for use in the manufacture, repair, operation, maintenance, or use of any aircraft;
    b. articles furnished by you and installed in aircraft or used in connection with aircraft or for spare parts, including ground handling tools and equipment, training aids, instructions, manuals, blueprints, engineering or other data or advice, and labor relating to such aircraft or articles.

Aircraft Grounding means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions by reason of the existence of any alleged or supposed defect, fault or condition of any part manufactured, sold, handled or distributed by you or manufactured, assembled or processed by any other person or organization according to specifications, plans, suggestions, orders or drawings of you or with tools, machinery or other equipment furnished to such persons or organizations by you.

A grounding will commence on the date the occurrence discloses such condition, or on the date an aircraft is first withdrawn from service on account of such condition.

Policy XLB9152271 also contains "Aerospace Products and Aircraft Grounding EXCLUSION" form EL22960 (5/95) which limits and precludes coverage as follows:

This insurance does not apply to:

    a. aerospace products and completed operations; or
    b. reliance upon any representation or warranty made with respect

12

      thereto; and

c.     grounding of any aircraft.

d.     liability arising out of the liability of others assumed by any insured under any contract or agreement as respects a., b. and c. above.

Aerospace Products and Completed Operations means:

a.     aircraft, including missiles or spacecraft and ground support or control equipment, and any other goods or products manufactured, sold, handled or distributed by the insured or any services provided or recommended by the insured or by others trading under the insured's name for use in the manufacture, repair, operation, maintenance, or use of any aircraft;

b.     articles furnished by the insured and installed in aircraft or used in connection with aircraft or for spare parts, including ground handling tools and equipment, training aids, instructions, manuals, blueprints, engineering or other data or advice, and labor relating to such aircraft or articles.

Aircraft Grounding means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions by reason of the existence of any alleged or supposed defect, fault or condition of any part manufactured, sold, handled or distributed by the insured or manufactured, assembled or processed by any other person or organization according to specifications, plans, suggestions, orders or drawings of the insured or with tools, machinery or other equipment furnished to such persons or organizations by the insured.

A grounding will commence on the date the occurrence discloses such condition, or on the date an aircraft is first withdrawn from service on account of such condition.

Policy XLB9152271 contains the following endorsement "Personal Injury Following Form" form EL23736 (5/95) which limits and precludes coverage as follows:

Except insofar as coverage is available to the insured in the underlying insurance listed in the Schedule of Underlying Insurance, and for the full limits of liability shown therein, this insurance does not apply to any liability for one or more of the following offenses:

a.     Fright, disability, shock, mental anguish and mental injury;

b.     False arrest, detention, imprisonment, or malicious prosecution;

c.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d.     Libel, slander, defamation of character, humiliation or invasion of the rights or privacy, unless arising out of the advertising activities.

All other Terms and Conditions of this Policy remain unchanged.

Policies XLB9151959 and XLB9152271 include the following conditions:

SECTION IV<br>CONDITIONS

\* \* \*

 F. DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT

  1. YOU must see to it that WE receive prompt written notice of an OCCURRENCE which may result in a claim. Notice should include:

   a. How, when and where the OCCURRENCE took place;
   b. The names and addresses of any injured persons and witnesses.

  2. If a claim is made or SUIT brought against YOU, YOU must see to it that WE receive prompt written notice of the claim or SUIT.

  3. YOU and any other involved INSURED must:

   b. Immediately send US copies of any demands, notices, summons or legal papers received in connection with the claim or SUIT;
   c. Authorize US to obtain records or other information;
   d. Cooperate with US in the investigation, settlement or defense of the claim or SUIT;
   e. Assist US, upon OUR request, in the enforcement of any right against any person or organization which may be liable to YOU because of injury or damage to which this policy may also apply.

  4. YOU shall not make or authorize an admission of liability or attempt to settle or otherwise dispose of any claim or SUIT without OUR written consent.

\*\*\*

 I. MAINTENANCE OF UNDERLYING INSURANCE

  The policy or policies referred to in the Declarations and Schedule of UNDERLYING INSURANCE or renewals or replacements thereof not more restrictive in coverage shall be maintained in full effect during this POLICY PERIOD, except for any reduction in the aggregate limits solely by payment of claims and/or claims expense.

14

If such UNDERLYING INSURANCE is not maintained in full effect by YOU, or if any limits of liability of UNDERLYING INSURANCE are:

1. less than as stated in the Schedule of UNDERLYING INSURANCE; or

2. unavailable to YOU due to bankruptcy or insolvency of an underlying insurer; or

3. if there is any material change in the coverage of any UNDELRYING INSURANCE;

Then the insurance afforded by this policy shall apply in the same manner as if such UNDERLYING INSURANCE and limits of liability had been in effect, available, so maintained and unchanged.

J. OTHER INSURANCE

If OTHER INSURANCE, whether collectable or not, is available to YOU covering a loss also covered by this policy, other than a policy that is specifically written to apply in excess of this policy, the insurance afforded by this policy shall apply in excess of and shall not contribute with such OTHER INSURANCE.

## COVERAGE ANALYSIS

As a threshold matter, pursuant to the insuring agreements of policies XLB9151959 and XLB9152271, TIG does not currently have an obligation to provide a defense to Fairchild in any of the above-captioned lawsuits as we have not been provided with evidence to show that the amount of all underlying insurance and other insurance available to Fairchild has been exhausted by the payment of covered claims, subject to all other terms, exclusions, provisions and conditions of the Policies.

With regard to any potential indemnity obligations, policies XLB9151959 and XLB9152271 would not become potentially applicable unless and until the amount of all underlying insurance and other insurance available to Fairchild was properly exhausted, subject to all other terms, exclusions, provisions and conditions of those policies. At this time, we have not been provided with any information evidencing the proper exhaustion of all underlying insurance and other insurance available to Fairchild. As policies XLB9151959 and XLB9152271 are not potentially applicable at this time, TIG Insurance Company has no current obligation to indemnify Fairchild Corporation for costs sought or recovered from Fairchild Corporation in the captioned matter.

## RESERVATION OF RIGHTS

Notwithstanding the fact that TIG has no current obligation to indemnify or defend Fairchild for any of the above-captioned claims, there are other issues and policy provisions that may operate

15

to limit or preclude coverage for the captioned matters. Accordingly, in the event that the underlying insurance and any other insurance become properly exhausted by payment of covered claims, TIG reserves the right to assert the following coverage defenses:

1) Coverage does not apply under policies XLB9151959 and XLB9152271 for any claim alleging bodily injury, property damage or personal injury arising out of the discharge, dispersal, release or escape of smoke, vapors, soot fumes, acids, alkalis, toxic chemicals, liquids or gases, waster materials or other irritants, contaminants, or pollutants into or upon land, the atmosphere or any watercourse or body of water;

2) Coverage does not apply to any claim for bodily injury, property damage or personal injury that is excluded by any pollution exclusion as set forth in policies XLB9151959 and XLB9152271;

3) Coverage does not apply under policies XLB9151959 and XLB9152271 should it be determined that any "insured" failed to notify TIG of the captioned matters as soon as possible;

4) In accordance with Section II (Exclusions)(A)(2) and applicable law, coverage is not available under policies XLB9151959 and XLB9152271 for punitive damages, fines or penalties alleged or recovered in this matter;

5) Based upon the insuring agreements contained in policies XLB9151959 and XLB9152271 and applicable law, coverage does not apply to costs sought or recovered in the captioned matter that do not represent "damages" within the meaning of policies XLB9151959 and XLB9152271;

6) In accordance with the insuring agreement and definitions of "personal injury", "property damage" and "occurrence" as set forth in policies XLB9151959 and XLB9152271, coverage is not available under policies XLB9151959 and XLB9152271 for "personal injury", "property damage" or "bodily injury" that occurs before the inception or after the expiration of policies XLB9151959 and XLB9152271;

7) Based upon the definitions of "personal injury" and "property damage" as set forth in policies XLB9151959 and XLB9152271, coverage does not apply to any alleged damage or injury that does not constitute "personal injury" or "property damage" as defined in policies XLB9151959 and XLB9152271;

8) Based upon the definition of "occurrence" contained in policies XLB9151959 and XLB9152271, coverage does not apply to "personal injury" or "property damage" that is expected or intended from the standpoint of the insured or is otherwise not caused by an "occurrence" as defined in policies XLB9151959 and XLB9152271; and

9) Based upon Section II (Exclusions)(E), coverage does not apply under policies XLB9151959 and XLB9152271 to any obligation of an insured under any workers'

compensation, unemployment compensation, disability benefits law, or any other similar law.

In summary, TIG has no current obligation to defend or indemnify Fairchild Corporation under policies XLB9151959 and XLB9152271 since the underlying insurance and other available insurance have not yet been properly exhausted by payment of covered claims. In the event that proper exhaustion of fifty percent (50%) of the underlying coverage and all other insurance should occur for costs sought or recovered in the referenced matter, please notify us immediately.

If Fairchild possesses or is aware of any additional information that evidences all underlying insurance and other insurance available to Fairchild has been properly exhausted by payment of covered claims, please forward any such information to my attention. Upon receipt of any such information, RiverStone, on behalf of TIG will review it to determine whether its coverage analysis for this matter remains appropriate.

This correspondence is not intended, nor shall it be construed as an exhaustive listing of policy terms, conditions or exclusions which might apply to this matter, as it has or may continue to develop. TIG reserves all rights and defenses available to it under policies XLB9151959 and XLB9152271 and the applicable law, whether or not such rights and defenses are specifically enumerated herein. TIG further reserves the right to supplement this analysis, should any information suggest the applicability of additional policy provisions. TIG may supplement the foregoing reservation of rights to include any additional potential bases for reservation or denial that may be subsequently identified.

Our coverage analysis is based on the facts presented to us to date. Should Fairchild and/or its counsel be in possession of any information or facts which you wish us to further consider in these matters, kindly contact me with that information.

Should you have any questions concerning this correspondence or should you wish to discuss it further, please don't hesitate to call me at either my direct dial number: (603) 656-2297; or at the toll-free number listed above. You may also contact me by e-mail at Robert_Sanborn@trg.com.

Very truly yours,

Robert Sanborn, CPCU, AIC
Latent Case Manager

cc:   G. Todd Hoffpauir, Esq.
      Montgomery, Rennie & Jonson
      36 East Seventh Street, Suite 2100
      Cincinnati, OH  45202